THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE C. HYMEL, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 24 C 1495 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 30, 2022, Plaintiff Catherine Hymel filed a complaint against Defendant Allstate Insurance Company for breach of contract under Illinois law. (Dkt. 1). Hymel brought her original complaint with two other plaintiffs, who claimed breach of contract and negligent infliction of emotional distress. (*Id.*) Allstate moved to sever the plaintiffs and dismiss the claim for negligent infliction of emotional dismiss, which the Court, through Judge Coleman, granted. *Parson et al. v. Allstate Ins. Co.*, Case No. 22 CV 3962, Dkt. 28 (N.D. Ill. Aug. 4, 2023). Hymel's severed case was then assigned to this Court. On May 3, 2024, Hymel filed an Amended Complaint asserting breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with business relations, and violation of the Louisiana Unfair Trade Practices Act ("LUPTA"). (Dkt. 12). Allstate now moves to dismiss Counts II, III, and IV for failure to state a claim. (Dkt. 21). For the following reasons, Allstate's motion to dismiss [21] is granted in part.

## BACKGROUND

The Court takes the following facts from Hymel's Amended Complaint and treats them as true for the purposes of this motion. In 1989, Hymel began training as an Allstate agent and subsequently came to own an agency in Louisiana. (Dkt. 12 ¶¶ 2, 29). As an "Exclusive Agency"

1

owner ("EA"), Hymel was Allstate's independent contractor and party to the Allstate R3001 Exclusive Agency Agreement (the "EA Agreement"). (*Id.* at ¶¶ 2, 18–19).

In 2018, Allstate Field Sales Leader Doug Caminita[1] "tried to convince" Hymel to sell her agency to Allstate agent Glenn Liuza. (*Id.* at ¶¶ 30–32). Hymel declined as she was sixty-one and intended to retire at sixty-five. (*Id.*) The following year, Caminita requested that Hymel sell her agency to Gina Molinar, his girlfriend. (*Id.* at ¶¶ 32–35). Hymel again declined, as she had concerns about Molinar's lack of experience and licensure. (*Id.* at ¶¶ 34, 36). In response, Caminita became "increasingly dismissive and toxic," engaging in "unprofessional" behaviors such as refusing to answer Hymel's calls and ignoring her at meetings. (*Id.* at ¶¶ 37–38).

An EA's sale of an Allstate Insurance policy is added to their "book of business," in which they have an "economic interest." (*Id.* at ¶¶ 20–21). According to the EA Agreement, an EA has the right to (1) sell her economic interest in the business to an approved buyer; or (2) elect a termination payment. (*Id.* at ¶ 23; Dkt. 13 at 9). Accordingly, the EA Agreement provided that upon termination of the agreement, Hymel had ninety days to sell her economic interest. (Dkt. 12 at ¶ 24; Dkt. 13 at 50–56, 59). Otherwise, Hymel would receive the termination payment. (*Id.*) Hymel alleges that the termination payment is "generally less than 50% of the sale value" of the economic interest. (Dkt. 12 at ¶ 24). In February 2020, Hymel decided to sell her agency. (*Id.* at ¶ 40). And in December 2020, Allstate sent Hymel a ninety-day notice of termination of the EA Agreement for "lack of production." (*Id.* at ¶ 56). Thus, Hymel had ninety days from December 2020 to sell her economic interest or would receive the termination payment.

According to the EA Agreement, Allstate is not involved in the sale of an EA's economic interest, except to "approve or deny" a buyer. (Dkt. 12 at ¶ 25; Dkt. 13 at 56) ("The only times

---

[1] The Amended Complaint refers to the same individual as both Doug "Caminiti" and "Caminita." For consistency, the Court will refer to him as "Caminita" throughout.

2

Allstate is involved is to approve the buyer and when you elect to receive the termination payment."); Dkt. 13 at 9 ("The Company retains the right in its exclusive judgment to approve or disprove such a transfer."). Allstate's approval of a buyer is subject to their discretion, including "whether the buyer is qualified" under what Hymel characterizes as "objective qualifications." (Dkt. 12 at ¶ 27; Dkt. 13 at 57–58). Allstate otherwise has "sole contractual discretion to approve or reject a buyer" of an EA agency. (Dkt. 12 at ¶ 96).

Between February 2020 and the EA Agreement's termination in February 2021, Hymel engaged in the following sale discussions:

- May 2020: Lee Fritze, an experienced insurance agent, submitted to Hymel an oral offer for $420,000. (*Id.* at ¶ 41). Caminita "refused to assist" with the approval process, because, upon information and belief, he would not have received a $5,000 bonus if the sale was approved. (*Id.* at ¶¶ 43–44). Allstate's National Agency Establishment Coordinator also did not follow-up with Hymel and Fritze, so Fritze withdrew his verbal offer. (*Id.* at ¶¶ 46–47).

- September 2020: Megan Dodge, an Allstate agent, submitted to Hymel an offer in writing for $420,000. (*Id.* at ¶ 51). After Dodge failed the Series 6 licensing test, Allstate did not approve her to purchase Hymel's agency. (*Id.* at ¶ 52). Upon information and belief, Allstate allowed Dodge to later purchase an agency without her license. (*Id.* at ¶ 53).

- December 2020: Scott Stephens contacted Hymel regarding purchasing her agency. (*Id.* at ¶ 58). Caminita did not follow-up with Stephens to facilitate the sale and told Hymel "we don't want him." (*Id.* at ¶ 59).

- December 2020: Tabita D'Aribba and Beau Bordeau, Allstate-trained agents, expressed interest in each purchasing half of Hymel's agency. (*Id.* at ¶¶ 60–61). Caminita "refused to entertain" them as buyers because he thought they were too "new." (*Id.* at ¶ 62).

- December 2020: Caminita proposed to Hymel that she sell her agency to Jon Jackel. (*Id.* at ¶¶ 63–64). Yet, Caminita required that Jackel obtain his property and casualty license. (*Id.*) Caminita did not inform Hymel when Jackel obtained the requisite license, and Jackel ultimately bought another Allstate agency. (*Id.* at ¶¶ 64–65).

- February 2021: Shawn Coffey, an Allstate agent, offered Hymel $382,000 for her agency. (*Id.* at ¶ 66). Caminita and an Allstate Agency Manager approved the sale.

3

> (*Id.*) After, the two informed Coffey he must keep the physical office location open in order to move forward. (*Id.* at ¶ 67). Coffey withdrew his offer. (*Id.*)

- February 2021: An Allstate Field Sales Leader referred Kenya Morgan, an inexperienced individual employed in retail sales, as a buyer to Hymel. (*Id.* at ¶ 69). Morgan did not follow-up with Hymel. (*Id.* at ¶ 70).

- February 2021: Adam Levenway, an Allstate agent, told Hymel he was interested in purchasing her agency. (*Id.* at ¶ 71). Upon information and belief, Allstate told Levenway that he would be given Hymel's book of business for free, so he stopped returning Hymel's calls and received her book of business ten days prior to the EA Agreement's termination. (*Id.* at ¶¶ 72–73).

Ultimately, Allstate terminated Hymel's EA Agreement. (*Id.* at ¶ 80). As Hymel had not sold her book of business, she accepted a termination payment of $148,000. (*Id.* at ¶¶ 81, 85). Hymel alleges the EA Agreement's provision of "objective qualifications" gives an EA the "reasonable expectation" that Allstate will consider potential buyers who meet those criteria. (*Id.* at ¶ 28). Thus, Hymel alleges that Allstate breached the EA Agreement (Count I), the covenant of good faith and fair dealing (Count II), tortiously interfered with her business relations (Count III), and violated the LUTPA (Count IV) by preventing her from selling her agency at "fair market value." (*Id.* at ¶¶ 87–93, 94–102, 103–11, 114–17). Allstate now moves to dismiss Counts II, III, and IV of the Amended Complaint for failure to state a claim. (Dkt. 21).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court

4

accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citation omitted). The Court "also consider[s] any documents attached to and integral to the complaint as part of the [plaintiff's] allegations." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Hymel voluntarily dismisses Count IV of the Amended Complaint in her Response. (Dkt. 23 at 4, 11). The Court therefore dismisses Count IV, which alleges a violation of the LUPTA, without prejudice.

I.  **Good Faith and Fair Dealing (Count II)**

   a.  **Waiver**

As an initial matter, Hymel argues that Allstate waived its challenge to Count II when it moved to sever and dismiss an unrelated plaintiff's claim for negligent infliction of emotional distress in the formerly consolidated case. (*See* Dkt. 23 at 4–5). According to Hymel, Allstate had the opportunity to move to dismiss or strike Hymel's claim; when they did not, it foreclosed their arguments attacking her current claim for breach of the implied covenant of good faith and fair dealing.

Hymel provides no legal backing to her assertion, but the Court interprets her argument as under Federal Rule of Civil Procedure 12(g)(2). Rule 12(g) states that "[e]xcept as provided in Rule 12(h)(2) or (3) a party . . . must not make another motion under this rule raising a defense or

objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g). Hymel's argument lacks merit: her original complaint only asserted a claim for breach of contract under Illinois law. Upon severance and amendment, Hymel now asserts additional claims for breach of the implied covenant of good faith and fair dealing and tortious interference with business relations under Louisiana law (Counts II and III). Allstate had no opportunity to move to dismiss those claims for failure to state a claim until this point. Here, there is no concern that Allstate is bringing "piecemeal litigation" by "mov[ing] to dismiss on one ground, los[ing], then [fil]ing a second motion on another ground." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (allowing defendants to raise new arguments in a successive Rule 12(b)(6) motion in response to an amended complaint).

b.  **Breach and Bad Faith**

Under Louisiana law,[2] "[c]ontracts must be performed in good faith." La. Civ. Code art. 1983; *Whitney Bank v. SMI Companies Glob., Inc.*, 949 F.3d 196, 210 (5th Cir. 2020) ("As a general rule, Louisiana recognizes an implied covenant of good faith and fair dealing in every contract." (quoting *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997))). "An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation." *Whitney Bank*, 949 F.3d at 210 (quoting La. Civ. Code art. 1997 cmt. b). Therefore, a court does not analyze

---

[2] Hymel pleads that Louisiana state substantive law applies to the dispute, while Allstate "takes no position." (Dkt 21 at 3 n.1; Dkt. 24 at 5 n.1). As the Court sits in diversity, the choice-of-law rule of the forum state, Illinois, applies. *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184 (7th Cir. 1996)). Typically, a court will apply a contract's choice-of-law provision to disputes arising from that contract. *Kohler*, 80 F.3d at 1185. The EA Agreement does not contain a choice of law provision. (Dkt. 12 ¶ 6). Thus, in Illinois, courts apply the "most significant contacts test" to determine the state substantive law. *Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E.2d 1083, 1093 (Ill. 1993); Restatement (Second) of Conflict of Laws § 188 (1971). Here, the Court finds Louisiana law applies. All of the relevant facts occurred in Louisiana, including the entry of the contract, location of Hymel's agency, location of Hymel, and the alleged acts by Allstate. *See e.g.*, *R&Q Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 2016 WL 1247478, at *3 (N.D. Ill. Mar. 30, 2016) (considering (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.); (Dkt. 12 at ¶¶ 6–7).

a party's duty of good faith (or bad faith) dealing "unless and until [it] find[s] that the party has failed to perform an obligation." *Id.* at 211 (quoting *Favrot v. Favrot*, 68 So. 3d 1099, 1109 (La. Ct. App. 2011)). In other words, "[a]bsent a breach of contract, [] there is no independent claim for breach of the implied covenant of good faith." *Riley v. Cantrell*, 2021 WL 2680211, at *7 (E.D. La. June 30, 2021) (citing *Whitney*, 949 F.3d at 210–11) (holding that any claim regarding the defendant's bad faith fails because the defendant did not breach any contract terms). The plaintiff must allege an express breach of a contract provision. *See id*.

Here, Allstate suggests that they could not have plausibly breached the EA Agreement, since it afforded them broad discretion to approve or deny a sale. Therefore, absent a breach, Hymel has no claim for breach of the implied covenant of good faith and fair dealing. Yet, Allstate did not move to dismiss Count I. In Count I, Hymel alleges Allstate breached the EA Agreement through, in part, refusing to communicate with buyers, denying sales, and informing a buyer they could receive Hymel's book of business for free. (Dkt. 12 ¶¶ 90–92). Dismissing Count II on Allstate's argument would require a threshold analysis of Hymel's unchallenged breach of contract claim. It appears counterintuitive for the Court to analyze whether Hymel plausibly alleges Allstate breached the EA Agreement—in order to determine if Hymel successfully pled that breach was in bad faith—when that threshold claim was not challenged or briefed. Allstate may later raise these arguments on a motion on the pleadings or summary judgment. For now, this claim stands.

II. **Tortious Interference with Business Relations (Count III)**

To state a claim for tortious interference with business relations under Louisiana law, the plaintiff "must show by a preponderance of evidence that the defendant improperly and maliciously influenced others not to deal with plaintiff." *Hardy v. Easterling*, 113 So. 3d 1178, 1186 (La. Ct. App. 2013); *Whitney Bank*, 949 F.3d at 207. Accordingly, the plaintiff must prove

7

two elements: (1) actual prevention and (2) actual malice. To prove actual prevention, "[i]t is not enough to allege that a defendant's actions affected the plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party." *Henderson v. Bailey Bark Materials*, 116 So. 3d 30, 37 (La. Ct. App. 2013). Next, the plaintiff "must also establish that the interference was improper," meaning it was "not to protect legitimate interests" or motivated by profit. *Whitney Bank*, 949 F.3d at 207 (citations omitted). Finally, to prove actual malice, "a plaintiff must prove that the defendant was motivated by spite or ill will." *Id*. (citations omitted).

      First, Hymel alleges only one potential instance of "actual prevention": Hymel's dealings with Levenway. Because of Allstate's communication to Levenway that he would receive Hymel's book of business for free, Levenway stopped receiving Hymels calls or communicating with her regarding a sale. This action prevented Hymel from dealing with Levenway whatsoever. Ultimately, Levenway did receive Hymel's book of business prior to the EA Agreement's termination. For the rest of Hymel's sales interactions, Hymel alleges that she did in fact deal with these third parties, but that Allstate did not facilitate or approve the sale. Hymel does not allege that outside of Levenway, she was prevented with communicating with or dealing with third parties to pursue certain sales. In fact, she states that she dealt with at least eight third party potential buyers. Therefore, Hymel's allegations—outside of Levenway—do not provide sufficient factual information to infer that Allstate prevented her from dealing with the parties, just that Allstate's actions affected her business interests of completing a sale.

      Next, Hymel must plead facts establishing an inference that Allstate's prevention with Levenway was "motivated by spite or ill will," not by profit or to protect legitimate interests. As the Fifth Circuit laid out in *Whitney Bank*, Louisiana "jurisprudence has viewed this cause of action

with disfavor" and found that satisfying "the malice element . . . is difficult (if not impossible) to provide in most commercial cases in which conduct is driven by the profit motive, not by bad feelings." 949 F.3d at 208 (citing *Bogues v. La. Energy Consultants, Inc.*, 71 So. 3d 1128, 1135 (La. App. 2011)); *see also Frisard v. Eastover Bank for Sav.*, 572 So. 2d 343, 344 (La. Ct. App. 1990) (noting that tortious interference is an "intentional act . . . not a negligent act"). The *Whitney* court observed this standard is so difficult that "there appear to be no reported cases where a party has been held liable for the tort." *Id.*

Here, Hymel does not plausibly state that Allstate's actions as to Levenway were motivated by ill will or spite rather than a legitimate business interest. In fact, she does not state that Caminita—the sole individual identified in the Amended Complaint as having *any* sort of ill feelings—was involved with Levenway or the decision to give him Hymel's book of business. Nor does she plead any facts that weigh against the commonsense conclusion that Allstate's actions in granting Levenway her book of business was not motivated by profit, rather than any particular animus towards her.

Instead, Hymel generally notes that prior to her attempting to sell her agency, Caminita, an Allstate Field Sales Leader, became "pissed off" when Hymel did not sell her agency to his girlfriends, becoming increasingly dismissive and toxic," and engaging in "unprofessional" behaviors such as refusing to answer Hymel's calls and ignoring her at meetings. (Dkt. 12 ¶¶ 37–38). Yet, this assertion falls flat as Hymel does not plead that Caminita had any involvement in Allstate's communications with Levenway or that Allstate took the action motivated by "spite" or "ill will" rather than profit interest. *See D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*, 2021 WL 917335, at *4 (E.D. La. Mar. 10, 2021) ("[I]n the context of this tort, "an intent to maximize profits or garner more business is not 'malice.' " (quoting *Metcalfe & Sons Invs., Inc. v.*

9

*Multiquip, Inc.*, 2011 WL 4527432, at *3 (M.D. La. Sept. 27, 2011)); *Southeastrans, Inc. v. Landry*, 2021 WL 712507, at *3 (W.D. La. Feb. 23, 2021) (finding plaintiff pled insufficient factual matter to support an inference that a defendant's actions "in a commercial context" were motivated by "spite or ill will" rather than "profit"); *see also Bowman v. R. L. Young, Inc.*, 2022 WL 3021557, at *6 (E.D. La. July 29, 2022) (finding allegations of "direct hostility"—including that the plaintiff felt "jerked around" by defendant—did not constitution malicious action"); *Kalencom Corp. v. Shulman*, 2018 WL 1739213, at *3 (E.D. La. Apr. 11, 2018) (dismissing a tortious interference claim where plaintiff failed to provide "precise factual details concerning the acts or statements reflecting malice"). In fact, Allstate had a legitimate business interest in the sale of Hymel's agency, as laid out in the EA Agreement and accompanying documents. Finally, Hymel's pleading deficiencies cannot be saved by her conclusory response that, "Caminita's prior spiteful treatment of Ms. Hymel lends to [him] being instrumental in the decision to give Ms. Hymel's book to Mr. Levenway." (Dkt. 23 at 10). Ultimately, Hymel does not plead sufficient facts to support an inference that Allstate's actions were taken with the requisite "actual malice" to support a claim for tortious interference with business relations under Louisiana law.

## CONCLUSION

For the foregoing reasons, the Court grants Allstate's motion to dismiss [21] in part and denies it in part.

_____
Virginia M. Kendall
United States District Judge

Date: September 12, 2024